**UNITED STATES of America,
Appellant,**

v.

**Econuel PERRY, Jr., et al., Appellees.**

**No. 71–1106.**

United States Court of Appeals,
District of Columbia Circuit.

Oct. 20, 1972.

See also D.C.Cir., 471 F.2d 1069.

---

21. *Id.*

Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry, John F. Evans, and Michael J. Madigan, Asst. U. S. Attys., were on the brief for appellant.

Messrs. Ben Paul Noble and Thomas O. Mann, Washington, D. C. (appointed by this Court), were on the brief for appellee Jackson.

Messrs. Stephen S. Millstein and O. B. Parker, Washington, D. C., were on the brief for appellees Matthews and Smith.

Mr. David B. Lamb, Washington, D. C., was on the brief for appellee Beard.

Mr. Bernard W. Kemp, Washington, D. C., entered an appearance for appellee Perry.

Before WRIGHT, ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellees are charged with robbing the Department of Commerce Credit Union on 22 January 1970. They were allegedly observed in the vicinity of the Credit Union just prior to the robbery by Mrs. Carlin P. Middleton, who subsequently testified against the appellees before the grand jury. Prior to trial the Government made available to the defense all the Jencks Act material for each of the witnesses it intended to call at the trial except for the grand jury testimony of Mrs. Middleton.[1] For some undetermined reason the stenographic notes of Mrs. Middleton's testimony had been lost. On the record made in the District Court it does not appear either that the preservation procedures employed by the private recording company were inadequate or that the notes were lost or suppressed by the Government.

At the pre-trial identification hearing the Government offered Mrs. Middleton as a witness. After she had testified, pursuant to a motion by defense counsel, the trial court ruled that at trial Mrs. Middleton should not be permitted to testify in regard to any matters whatsoever. The trial judge's action was ostensibly based legally on the authority of the Jencks Act, 18 U.S.C. § 3500, as construed by our decision in Lee v. United States[2]; the factual basis of his action is stated in detail, *infra*. The ruling was appealed to this court and was affirmed by order without written opinion. The Government now asks that the case be reheard.

---

1. 18 U.S.C. § 3500 (1970). The Jencks Act material turned over to the defense consisted of the grand jury minutes of each witness and all relevant police and FBI reports.

2. 125 U.S.App.D.C. 126, 368 F.2d 834 (1966).

Because there is some indication that the District Court may have misinterpreted our decision in *Lee* and because subsequent cases, both in this court and in the United States Supreme Court, recognize that in some situations in which Jencks Act material has been lost, the sanctions of that Act need not be applied, we remand with directions that the District Court reconsider the motion to suppress and conduct a further hearing on the issues of the degree of negligence of the Government and the risk of prejudice to the defendant from the absence of the notes.

## I. The District Court's Rationale and the Government's Contentions

Through the court reporter who took stenographic notes of Mrs. Middleton's grand jury testimony, the Government proffered evidence that the notes were placed in a folder in a file in the office of the reporting service for which he worked, that the folder was removed from the file to type a transcript for an unrelated case, and that when the folder was returned to the file the notes of Mrs. Middleton's testimony were missing.[3] This is all that appears in the record as to the cause of the loss. The Government contends on this appeal that the notes had been maintained under the "regular and systematic procedures" employed by the reporting service for the maintenance and safekeeping of the notes of grand jury proceedings which its employees recorded.[4] It contends that "the lack of negligence in handling was clearly demonstrated by the evidence adduced."[5] The Government even went so far as to suggest, with only the slightest circumstantial evidence that the notes had been stolen on behalf of one of the defendants.[6]

The appellees, on the other hand, contend that "the question of negligence was and is a viable one in this case."[7] Although they offered the District Court no evidence that anything done by the Government or the reporting service was not in accordance with accepted practices, appellee Jackson maintains on this appeal that "the inexplicable loss of such important papers automatically raises a serious question of good faith and negligence. And the procedures employed by (the reporting service) *must have been inadequate*, given the secrecy and importance of the notes to the defense, or else the loss would not have occurred."[8]

Despite the debate on this appeal on the negligence question, our examination of the record indicates that the trial court never expressly decided the issue. It hinted in a few words that the reporting firm had shown itself to be unreliable, but said no more on the subject.[9]

### A. The Trial Court's Stated Reasons

The District Judge's ruling seems to consist of three parallel strands of thought. The first, which is infused most frequently throughout his colloquy with counsel, was expressed as "In this case, wholly aside from the strict interpretation of Jencks, as a pure matter of fairness, Mrs. Middleton's testimony was so rambling on the stand here, and so inconsistent and some of her statements so inherently outrageous that as a matter of fairness alone I think perhaps we can't have the testimony."[10] Shortly thereafter he reverted to this theme: "I am not talking just about the photographic information. I am talking about her testimony generally . . . . That is absurd testimony, absolutely ab-

---

4. Petition for Rehearing and Suggestion for Rehearing *En Banc* at 8.

5. *Id.* at 1.

6. *Id.* at 4.

7. Brief for Appellee at 10.

8. Brief for Appellee Jackson at 8 (emphasis in original).

9. Record, Vol. V, at 856. The Court found that there was no "conscious purpose" on behalf of the Government to destroy the notes, but this goes to the issues of intentional, not negligent, destruction. *Id.* at 924.

10. Record, Vol. V, at 856.

surd. And then there were other inconsistencies in her testimony . . . ." [11]

He then adverted to the second strand of his thought: "But normally that would be a matter for the jury, not for me. But Jencks says you must have this material. . . . They say you have got to have them and I think you have to have them if you're going to put the witness on." [12] He then amplified this in discussing Lee v. United States: [13] "[L]ikewise here there is no indication but that the reports were destroyed not in the ordinary course of business, but destroyed or lost not by the U. S. Attorney, but by the reporting firm employed by the United States; and that, of course, there is no indication whatever that there was any conscious purpose on behalf of the defendant [sic], and the defense counsel has agreed that was not so . . . ." [14] In referring to our court's holding in *Lee*, ". . . the fact, without making any general and sweeping holding, that in all cases the loss of Jencks Act statements will bar the witness. They say that in the context of that case and the delay in trial they cannot permit failure to produce the Jencks Act statement to go by without reversing." [15]

The third strand of the trial judge's thoughts were not that the Jencks Act was an absolute bar, but that the law should be evaluated with reference to the importance of the testimony and the

possible prejudice to the defendant. He referred to the statement made by an inter-office prosecution memorandum, " 'The fact that many of the witnesses, especially Mrs. Middleton, opened up in the grand jury,' . . . Now surely that indicates the importance of the grand jury testimony from the Government's point of view. If it is important from the Government's point of view, surely it is no less important from the defendant's point of view." [16]

In concluding his rationale, the trial judge interwove his first thought, the inherent contradictions and absurdity of the witness' testimony, with his third, the importance of it to the Government and to the defense:

In the context of this case, in the context of the many interviews had by Mrs. Middleton, in the context of her testimony on the stand in this case and the cross-examination, and except for the evidence that she has given on the stand here, there is no written word-for-word question and answer testimony anywhere available or would be available except this testimony in the grand jury which the U. S. Attorney and the grand jury thought was so terribly important.

It appears to this court that the absence of that question and answer testimony before the grand jury would, therefore, under the circumstances of this case and the circumstances and

---

11. *Id.* at 857.

12. *Id.* at 857–58. Referring to the non-verbatim notes others had taken of Mrs. Middleton's grand jury testimony, the court stated: "But I don't think anything before the Grand Jury except the stenographic notes is just going to do. . . . I just don't see how you can cure it, if the law is what I understand it to be." *Id.* at 856.

13. 125 U.S.App.D.C. 126, 368 F.2d 834 (1966).

14. Record, Vol. V, at 924.

15. *Ibid.* "[I]t occurs to me on reviewing the statute in the Lee case that if you want to put Mrs. Middleton on the stand it's up to the Government to come up with

the grand jury minutes, and the burden is on the Government and either you do or you don't. And without ruling on it formally at the moment, I may say that it does appear at this point unless you come up with them, you cannot put her on the stand." *Id.* at 402. The same "strict interpretation of Jencks," *Id.* at 856, as the District Court itself termed it, was repeated at other times during the argument on the motion. "Now, if the Lee case is controlling, as I think perhaps it is, and then I must bar her testifying because you don't have the Jencks Act material, namely, the Grand Jury testimony to produce." *Id.* at 854.

16. *Id.* at 923.

evidence we have as to the many statements made by this witness and her testimony on the stand, would be very prejudicial to the defendant.[17]

### B. The Government's Position versus the Trial Court's Reasoning

Turning now to the characterization of the trial judge's rationale by the Government, on the original appeal from the pretrial order suppressing all of Mrs. Middleton's testimony, the Government argued only two points: that the Jencks Act provided no sanction for the "good faith" loss of the grand jury minutes, and that the defendants suffered no prejudice due to this loss. There was no reference to the factor which appears to us from the transcript to have weighed most heavily in the trial judge's mind, i. e., the inherent contradictions and lack of veracity (in his opinion) of the witness' testimony.

On petition for rehearing the Government broadened the scope of its argument, urging that ". . . in failing to overturn the decision of the District Court, the panel in the instant case has in effect imposed upon the Government a form of strict liability in regulating the maintenance of Jencks Act material."[18] We think this may be an incorrect characterization of the trial court's rationale. There was not necessarily a

rule of strict liability in Judge Hart's decision, as he repeatedly both made reference to his own disbelief of the witness and weighed the importance of the testimony to the Government and defense, although he did say "you must have the material" and "in all cases the loss of Jencks Act statements will bar the witness."

But the Government went even further in its petition for rehearing, and urged upon this court that we interpret the Supreme Court's decision in United States v. Augenblick[19] and our decision in United States v. Bryant[20] as a blanket rule that in all cases a "good faith" loss of evidence or statements by the Government should not invoke the statutory sanctions of the Jencks Act, i. e., a rule of strict non-liability. We cannot agree with this as a proper rule for decision either.

### II. The Jencks Act

#### A. Rationale

If the judicial process be viewed as a search for truth, then the principal objective of the Jencks Act must be considered to be enhancing the likelihood of truth by enabling the defendant to gain access to previous statements of witnesses and use them as desired to test the accuracy of the actual testimony in court given by the same witnesses.[21]

---

17. *Id.* at 925–26.

18. Petition for Rehearing and Suggestion for Rehearing *En Banc* at 6. During argument on the motion to suppress before the District Court the Government put forth an extreme example of such "strict liability." "[I]f you carried that rule to its logical extent, if for example, a police officer had his house burglarized one night and he had a file in his home or perhaps his office at the Police Department burglarized and his whole file was stolen in the particular case, it had the original and all the copies of the statements of the witnesses, then that man who committed an armed robbery or first degree murder or whatever horrible crime could not be prosecuted for it." Record at 860.

19. 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

20. 142 U.S.App.D.C. 132, 439 F.2d 642, aff'd after remand, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971).

21. The intended purpose of the Act has been interpreted by the Supreme Court to be as follows:

[A]s the legislative history makes clear, the Jencks Act "reaffirms" our holding in Jencks v. United States, 353 U.S. 657 [77 S.Ct. 1007, 1 L.Ed.2d 1103], that the defendant on trial in a federal criminal prosecution is entitled, for impeachment purposes, to relevant and competent statements of a government witness in possession of the Government touching the events or activities as to which the witness has testified at the trial. S.Rep. No. 981, 85th Cong., 1st Sess., p. 3. And see H.R.Rep. No. 700, 85th Cong., 1st Sess., pp. 3–4. The command of the statute is thus designed to further the fair and just administra-

Under this view of the judicial process, the penalty imposed upon the Government, authorizing the trial court to strike the testimony of a witness where the Government "elects" not to produce the previous statements, is merely an ancillary method employed to compel the Government to assist in achieving the main objective, *i. e.*, the maximum truth in the courtroom. The penalty imposed on the Government, denial of the use of the witness, is strictly subsidiary and is not in any sense the objective of the statute. On the other hand, if the judicial process be viewed as an adversary game, then the failure of the Government to produce the previous statement of a witness results in an automatic penalty to the Government, denial of the use of its witness, just as in a football game offensive holding automatically results in a fifteen-yard penalty.

■ Viewed in its proper perspective, the judicial process *is* a search for truth, not an adversary game, and therefore the Jencks Act is not a mandate compelling the trial judge to strike (or bar) a witness' testimony when a previously made statement, irrespective of the reason, cannot be produced by the Government. On the other hand, the Government does not necessarily exonerate itself from the penalty of the statute by pleading so-called "good faith." Instead, the trial judge's effort must be to see that the defendant has access to previous statements of a witness to the fullest extent possible under the terms of the statute, in order to further the interests of justice in the search for truth. Whether the testimony of a witness is stricken or barred in advance, however, is in the discretion of the trial judge if eliminating the witness' testimony would restrict the search for truth rather than assist it in the instant and future cases.

■ Ordinarily, excluding evidence will assist this search only where the in-

formation has been lost or destroyed, negligently or for an unjustified purpose. "The language of the Jencks Act bolsters this position. Section 3500(a) speaks of statements in the possession of the United States, and subsection (d) provides that its sanctions apply '[i]f the United States elects not to comply.'"[22] It is undenied that the United States does not have "possession" of the statement, a fact which alone does not settle the matter. The United States might have "elected" to destroy the statement, which would then have given rise to inquiry as to motive and effect, as to purpose and prejudice. Or it might have acted negligently, and the policy of the statute, the quest for truth, is undercut as much by governmental negligence as by intentional acts of destruction. But the United States has not been shown to have performed any act, wilfully or negligently, to destroy these grand jury minutes, nor has it in the language of the statute "elect[ed] not to comply with an order of the Court . . . to deliver to the defendant any such statement." The Government has delivered the grand jury minutes of all other witnesses, and all other memoranda bearing on the testimony of the witness Middleton, most of which it could not be compelled to produce. The Government most desperately would "elect" to produce Mrs. Middleton's transcript, too, but it is beyond the Government's powers to do so.

We do not read "elect" in the literal or narrow sense, but rather as a purposive or negligent act on the part of the Government which has as a direct and foreseeable result the loss or destruction of documents which otherwise the Government could be compelled to produce. Looking to both the words and purpose of the statute, in this case so far there has been no showing that the Government has done either by commission or omission any act which has resulted in

tion of criminal justice, a goal of which the judiciary is the special guardian. Campbell v. United States, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961).

22. United States v. Williams, 384 F.2d 488, 493 (2d Cir. 1966).

its inability to comply with an order of the court to produce the grand jury testimony. There is, then, at present no basis under the statute for the application of the sanctions therein prescribed.[23]

### B. Decisions

The parties here and the trial court draw divergent conclusions from previous decisions of the Supreme Court and this court. The trial court stated, "But Jencks [statute] says you must have this material," and cited our decision in Lee v. United States, in which we did say, "But the Jencks Act does not embody in terms any 'good faith' exception".[24] From this the defendants argue that only if the destroyed or lost documents were completely incorporated in other documents given to the defense can the Government be excused. On the other hand the Government strenuously urges that absent bad-faith suppression or negligent loss by the Government of Jencks Act information a witness' testimony must always be admitted at trial. This result, according to the Government, is required by the Supreme Court's decision in United States v. Augenblick,[25] and this court's decision in United States v. Bryant.[26] We see nothing in either Augenblick or Bryant that requires the admission of Mrs. Middleton's testimony, nor do we see anything in Lee which requires striking or barring in advance her testimony.

In Lee the missing records were of narcotics dealings with the defendant, and the two government investigative agents each said on cross-examination that without such records (which he himself had made) "he could not say what the precise scope of those dealings was." [27] The Government was unable to produce the records because they had been destroyed. The defense motion to strike the testimony was denied, an action which on appeal was held to be erroneous. In Lee the act responsible for the non-producibility of the records, even though no evil intent was shown, was a purposeful act by the Government itself. There was also the factor that "the ability of the accused to defend has already been jeopardized by a deliberate delay between offense and arrest calculated to serve police purposes alone . . . . The police cannot have it both ways, simultaneously seeking the privilege of delay and neglecting their responsibilities under the Jencks Act." [28] Therefore, since "the Jencks Act does not embody in terms any 'good faith' exception", we were "slow to imply one" [29] in Lee.

In Augenblick the Supreme Court found that the Government had not purposely suppressed missing Jencks Act information and held the witness' testimony admissible at trial. "[T]he Government bore the burden of producing them or explaining why it could not do so.

23. Our conclusion that the loss of Jencks Act information by itself does not automatically require the imposition of sanctions is by no means novel. "Petitioners' contention that the words 'in the possession of' must be interpreted as meaning 'possession at any prior or present time' must be rejected. Congress surely did not intend to initiate a game of chance whereby the admission of a witness' testimony is made to depend upon a file clerk's accuracy or care. Senator O'Mahoney, the sponsor of the bill, in illustrating that his measure approved the essential basis of the Jencks case, interpreted Jencks to apply only where the Government 'had at the same time in its files a statement' pertinent to a witness' testimony." So said Mr. Justice Frankfurter and three

other Justices in Campbell v. United States, 365 U.S. 85, at 102, 81 S.Ct. 421, 430, 5 L.Ed.2d 428 (1961), and nothing said in the 5–4 majority opinion contradicts this.

24. 125 U.S.App.D.C. 126, 129, 368 F.2d 834, 837 (1966) (emphasis added).

25. 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

26. 142 U.S.App.D.C. 132, 439 F.2d 642, aff'd after remand, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971).

27. 125 U.S.App.D.C. at 129, 368 F.2d at 837.

28. Id. at 129–30, 368 F.2d at 837–838.

29. Ibid.

The record is devoid of credible evidence that they were suppressed." [30] *Augenblick* clearly did not hold, however, that testimony must be admitted in any case in which the Government is in "good faith" and nonnegligent. The Supreme Court simply held that the trial court had not abused its discretion in permitting a witness' testimony even though the Jencks Act information had been lost.[31]

In *Bryant* we held "that sanctions for non-disclosure based on loss of evidence will be invoked in the future *unless* the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation. The burden, of course, is on the Government to make this showing." [32] And we footnoted, "Although there *is* an exception for good faith loss of evidence, . . . ." [33] thus recognizing that the Jencks Act penalty should not be automatically invoked when evidence once in the possession of the Government turns up missing.

Also in *Bryant* we did say that even though Jencks Act information has been lost or destroyed

> criminal *convictions* otherwise based on sufficient evidence *may* be permitted to stand so long as the Government made "earnest efforts" to preserve crucial materials and to find them once a discovery request is made.[34]

It must be noted, however, that the court's language in *Bryant* was permissive and not mandatory, and that it spoke in terms of a conviction already obtained, at a stage when the trial or appellate court would be in a position to review the whole record in evaluating the interests of justice. In the case at bar we have a total ban before trial of one witness' testimony, based on the combined themes that the Jencks Act requires it (no good faith exception and the importance of the testimony) and the inherent incredibility of the proffered testimony.

Our test enunciated in the *Bryant* decision and applied to losses occurring prior to that decision is what we have called a "pragmatic balancing approach," [35] requiring the trial court to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." [36] This balancing approach was applied by the District Court on remand in *Bryant*, resulting in a determination that "[a]lthough the degree of negligence shown is regrettably great, it is outweighed by other factors," specifically the fact that the tape recording which had been lost was almost entirely unintelligible and would have been of little use to the defense.[37]

We did not have occasion in *Bryant* to consider the proposition, raised by appellees here, that even nonnegligent loss of Jencks Act material

---

30. 393 U.S. at 355–356, 89 S.Ct. at 533, 21 L.Ed.2d 537.

31. *Id.* at 355, 89 S.Ct. at 528, 21 L.Ed. 2d at 537.

32. 142 U.S.App.D.C. at 142, 439 F.2d at 652.

33. 142 U.S.App.D.C. at 141 n. 20, 439 F.2d at 651 n. 20 (emphasis added).

34. *Id.* at 141, 439 F.2d at 651 (emphasis added).

35. United States v. Bryant, 145 U.S.App. D.C. 259, 261, 448 F.2d 1182, 1184

(1971). *Bryant* also enunciated a standard to be applied to losses occurring after the *Bryant* decision, a standard to which we have no occasion to resort here, as the loss occurred prior to *Bryant*. *See* United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).

36. 142 U.S.App.D.C. at 142, 439 F.2d at 653.

37. United States v. Bryant, 145 U.S.App. D.C. 259, 448 F.2d 1182, 1183–84 (1971).

may be a ground for imposition of Jencks Act sanctions if the trial court finds that the unavailability of the statement seriously prejudices the defense. Absent due process considerations,[38] we hesitate to adopt this position here. As we noted in *Bryant*, the purpose of discovery rules in criminal cases is "[to] make the trial more a 'quest for truth' than a 'sporting event.'"[39] While we stated then and still believe that the Government's burden in this quest for truth "must be a heavy one," we do not turn that burden into an absolute duty. All we require is that the Government make "'earnest efforts' to preserve crucial materials and to find them once a discovery request is made."[40] It might be argued that such a rule provides an easy means for the Government to avoid the Jencks Act by pleading innocent loss in situations where it would be difficult for the defense to rebut the Government's showing of care. But until future cases indicate otherwise, we are not so suspicious of the Government's intentions with respect to complying with the Jencks Act to justify adopting such a prophylactic rule.

III. *Trial Court's Own Belief as to Truth of Witness' Testimony Is No Part of Jencks Act Rationale*

After the trial judge gave his personal evaluation of the witness Middleton's testimony, he stated, "But normally that would be a matter for the jury, not for me. But Jencks says you must have this material."[41] If the trial judge had omitted the word "normally" —"But that would be a matter for the jury, not for me"—he would have been on sound ground. He erred in thinking that this was an abnormal case in which he was required to evaluate the witness' credibility, because ". . . Jencks says you *must* have this material." (Emphasis supplied.)

The trial judge thus confused two entirely separate matters, his belief as to the truth of the witness' testimony and the obligation of the Government to produce Jencks material or incur the penalty provided by the Jencks Act. This was reasoning from a false premise, because there is nothing in the rationale behind the penalty which may be imposed under the Jencks Act that has anything to do with the trial judge's own belief (or lack of belief) in the witness' testimony.

As we discussed the rationale of the Jencks Act, "The command of the statute is thus designed to further the fair and just administration of criminal justice, a goal of which the judiciary is the special guardian."[42] The lever provided by the Jencks Act to "further the fair and just administration of criminal justice" is to penalize the Government, if it "elects" not to produce the statements. There is nothing in the Act or the background of the Act which implies that the trial judge's action in striking or barring a witness' testimony is to be influenced in any way by his opinion of

---

38. On this appeal appellee Jackson also asserts that even if the suppression of Mrs. Middleton's testimony is not mandated by the Jencks Act, allowing her to testify without producing the minutes of her grand jury testimony for the defense would amount to a violation of his right to a fair trial in violation of the Due Process Clause. While it is clear that discovery issues in criminal cases have a constitutional flavor, *see, e. g.*, Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1958); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1962), and the Supreme Court has even recognized that "in some situations, denial of production of a Jencks

Act type of a statement might be a denial of a Sixth Amendment right," United States v. Augenblick, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969), nevertheless we do not think that the prejudice, if any, caused the defense in this case merits consideration at the constitutional level.

39. 142 U.S.App.D.C. at 134, 439 F.2d at 644.

40. *Id.* at 141, 439 F.2d at 651.

41. Record, Vol. V, at 857–58.

42. Campbell v. United States, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428 (1961).

the veracity of the particular witness involved. Logically there is no reason why the trial court's opinion on the witness' veracity should relate to the Government's obligation to produce or incur the penalty.

 Bear in mind that in the case at bar the trial judge took up the Jencks Act question in a preliminary hearing held to inquire under *Wade-Gilbert-Stovall* as to the admissibility of eyewitness identification testimony.[43] As this court *en banc* has recently had occasion to observe, in connection with pre-trial suppression hearings on identification, "In considering the admissibility of identification evidence at trial, constitutional infirmities will bar its admission, but testimonial infirmities go only to the weight of the evidence. We start with the principle, well phrased by Judge (now Chief Justice) Burger in a different context but thoroughly applicable here: 'When an eyewitness is willing to give testimony, under oath and subject to all the rigors of cross-examination and penalties of perjury, he must be heard.'"[44] In that case as here, we recognized that a witness' veracity should be considered by the jury and not by the trial judge.

IV. *Conclusion*

 In the case at bar the problem is not that the trial judge has abused his discretion; in the stated reasons for the exercise of his discretion he has revealed an erroneous rationale for so doing. We recognize that the trial court has discretion in applying the Jencks Act, depending upon his finding as to either the motivation of the Government in destroying the document, or its culpability for negligence, or its exercise of bad judgment in administrative procedures.

As to the trial judge's faulty premises: First, he appeared at times to take the mandate of the Jencks Act as being without exception, probably based on a misreading of our opinion in Lee v. United States.[45] As we discussed above, unless either in the instant or subsequent cases the interest of justice will be furthered by penalizing the Government, then that penalty is not to be invoked automatically as in an adversary game. In order to exclude testimony, there should be a showing of either negligence or purposeful destruction accompanied by either bad motive or bad judgment. Despite the debate on this appeal on the negligence question, our examination of the record indicates that the trial court never expressly decided the issue. It hinted in a few words that the reporting firm had shown itself to be unreliable, but said no more on the subject.[46] With regard to the trial court's weighing the prejudice resulting to the defendants by the admission of

---

43. Ordinarily a Jencks Act question would not arise or be resolved at a pre-trial hearing. "Suppression hearings are nowhere alluded to in the legislative history and the statute does not supply any direct guidance for conduct at such hearings." United States v. Covello, 410 F.2d 536 (2d Cir. 1969). In this Circuit, however, a frequent practice has developed of determining Jencks Act issues prior to the commencement of trial. This practice is both efficient and consistent with the policies behind the Jencks Act. If the court waits until trial to determine whether evidence is producible under the Act, continuances must often be granted and delays in the trial are inevitable.
 While we approve pre-trial determinations of Jencks Act issues, we do not hold that they must always be decided prior to trial. Situations may arise in which it is more appropriate to wait un-

til evidence is submitted at trial before making a determination. The course to be followed in a particular situation is left to the reasonably exercised discretion of the trial judge.

44. United States v. Rufus Brown, 461 F.2d 134 (D.C. Cir., 1972) (en banc), citing Brown v. United States, 126 U.S. App.D.C. 134, 143, 375 F.2d 310, 319 (1966).

45. For Judge Hart's discussion of *Lee* see Record, Vol. V, at 923–25. For a correct interpretation of *Lee* see the text accompaning footnotes 17–22, *supra*.

46. Record at 856. The court found that there was no "conscious purpose" on behalf of the Government to destroy the notes, but this goes to the issues of intentional, not negligent, destruction. *Id.* at 924.

Mrs. Middleton's testimony, if the Government was neither malicious, negligent, nor stupid, we do not see that any question of weighing possible prejudice to the defendants arises.

The second basic error in the rationale of the trial court was, of course, in barring the testimony of the witness in advance of trial, based on his own doubt of its veracity, and in linking this doubt with his obligation to invoke the penalty of the Jencks Act.

 It should be noted in concluding that even if the District Court finds some degree of negligence, it need not automatically invoke the Jencks Act sanction. As we said in *Bryant*, we have adopted a balancing approach for these cases which gives broad discretion to the trial court.[47] If, even after finding some degree of negligence, the trial court finds the risk of prejudice to the defense slight, it can refuse to impose the Jencks Act sanctions.[48] Accordingly, the trial court should feel free to consider all matters relevant to the prejudice issue, including other available evidence of Mrs. Middleton's grand jury testimony and the importance of that testimony to the defense.

 As to the character and extent of the Government's responsibility, we hold that the negligence of the reporting company, if any and depending on the type, may be imputed to the Government. Because of the various public policies relating to criminal prosecutions necessarily involved here, but of course which do not exist in a strictly private agency relationship, the full scope of the doctrine of *respondeat superior* should not be applied. Rather, the Government's responsibility for the acts of its agent, and grounds for invoking the sanctions of the statute to bar otherwise admissible testimony, should be tested more by the principles of negligent entrustment.

We therefore remand this case to the District Court for further consideration of the issues of the degree of negligence or bad administrative judgment on the part of the Government and the risk of prejudice to the defense caused by the unavailability of a transcription of Mrs. Middleton's grand jury testimony.

So ordered.

J. SKELLY WRIGHT, Circuit Judge, concurring:

I concur in Judge Wilkey's opinion. As Judge Wilkey indicates, *see* majority opinion at note 35, since the grand jury minutes in this case were lost prior to this court's decision in United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), nothing we say here in any way affects our holding in *Bryant* establishing standards for sanctioning losses of Jencks Act statements occurring after the date of *Bryant*. *See* 142 U.S.App. D.C. at 142, 439 F.2d at 652.

---

47. As the Supreme Court noted in a slightly different context in Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1958), administration of the Jencks Act must rest "within the good sense and experience of the district judge . . . and subject to the appropriately limited review of appellate courts."

On the evaluation of possible prejudice to the defendant by the absence of this grand jury testimony, the trial court should consider that there is available to the defense here three echelons of the witness' prior testimony: (1) the preliminary statements made to the FBI and other investigators before she appeared to the grand jury; (2) her statements to the detective and other government officers after her grand jury testimony as to what she actually testified; and (3) her testimony at pre-trial hearing. All of this will be available to defense counsel for use for impeachment purposes at the trial.

48. This is precisely what happened on remand in *Bryant*.