Daniel L. WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

No. 8089.

District of Columbia Court of Appeals.

Argued Oct. 15, 1974.

Decided Aug. 26, 1975.

John Z. Noyes, Washington, D. C., appointed by this court, for appellant.

David E. Wilson, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, and Frederick C. Moss, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and FICKLING and HARRIS, Associate Judges.

HARRIS, Associate Judge:

A jury acquitted appellant of armed robbery, but convicted him of two counts of assault with a dangerous weapon, D.C. Code 1973, § 22–502, and one count of carrying a dangerous weapon, *id.*, § 22–3204. He contends principally that the testimony of two witnesses should have been stricken under the so-called Jencks Act, 18 U.S.C. § 3500 (1970). We affirm the judgments of conviction, but remand for resentencing.

I

At 6:30 one morning, appellant and two cohorts initiated an armed robbery against O. J. Brown and Willie Satterfield. Another man, Joseph Cameron, witnessed the early stages of the activity and attracted the attention of officers in a passing police car. One of the would-be robbers escaped, but appellant and his other companion were apprehended and were identified on the scene.

The two victims and the bystander later testified before a grand jury. Following the customary procedures, their testimony was to be recorded by a dual tape system, whereby the witness' voice is recorded simultaneously with that of a court reporter speaking into a mask containing a microphone.[1] However, for unexplained and apparently unascertainable reasons, the testimony of Satterfield and Cameron failed to be recorded. Brown's testimony was recorded and preserved.

Appellant moved pretrial to exclude the testimony of Satterfield and Cameron on the ground that the government's failure to preserve and produce the transcripts of their respective appearances mandated that sanction under the Jencks Act.[2] After a lengthy hearing, the court found that the government had acted in good faith in attempting to obtain transcripts of the grand

---

1. Super.Ct.Cr.R. 6(d) provides that a reporter may be present during grand jury proceedings, but there is no requirement of reporting.

2. We note again the absence of any statutory basis for pretrial hearings on Jencks Act questions. *See Jones v. United States*, D.C.

App., 343 A.2d 346, at 348, n. 5 (1975). The statute explicitly provides that the possible imposition of a sanction for the non-production of a statement is to be considered after a "witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a) (1970). *Cf. United States v. Dockery*, D.C. App., 294 A.2d 158 (1972).

jury testimony, and that any negligence on the part of the particular reporter was not imputable to the government. Consequently, it ruled that exclusion of the witnesses' trial testimony was not required. Appellant renewed his claim in a motion to strike the testimony of Satterfield and Cameron at the conclusion of the government's case.[3] Faced thus with the same question it had resolved earlier, the court found that the government had "done everything possible to produce the testimony" and had "explained the absence" of the tape. It again stated that the drastic sanction of the Jencks Act was not justified under the circumstances.

The trial court's rulings were neither plainly wrong nor without evidentiary support in the record. *See* D.C.Code 1973, § 17–305. While the reporter who had been charged with recording that day's testimony before the grand jury was unavailable, the owner of the court reporting firm which had the subcontract for grand jury reporting examined the notes and played the tapes of the proceedings in question. He testified at the pretrial hearing, and patiently explained the usual and proper recording procedures. There was no question but that both the company and the general procedures were reliable and accepted. Neither the particular reporter nor the recording equipment had misperformed in the past. We conclude that the court's determination that the government was not to be charged with negligence is justified on the record. *See United States v. Person*, 155 U.S.App.D.C. 455, 478 F.2d 659 (1973); *United States v. Perry*, 153 U.S.App.D.C. 89, 100, 471 F.2d 1057, 1068 (1972).

We reach a similar conclusion as to the trial court's finding concerning the government's good faith efforts to preserve and produce transcripts. While no particular standards have been promulgated for the preservation of grand jury testimony, *see United States v. Bryant*, 142 U.S.App.D.C. 132, 439 F.2d 642, *aff'd after remand,* 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971), it is apparent that the government has relied justifiably on the past performance of the reporting firms under contract. Their records of performance have been exemplary and have not called for formal, written directions. Given the lack of complaint about this particular reporter and the normal procedures in the past, we fail to see how a written exposition of the steps well known in the trade would have avoided this isolated incident. The government further exhibited its good faith by producing every available document, including summaries— albeit succinct and informal—of Satterfield's and Cameron's respective statements as given to a secretary of the prosecutor immediately preceding their grand jury appearances. There was no incidence of government malice, bad administrative judgment, or unjustified purpose even intimated on the record. *See United States v. Perry, supra,* 153 U.S.App.D.C. at 95, 97, 99–100, 471 F.2d at 1063, 1065, 1067–68.

Appellant claims that he was prejudiced significantly by the failure to exclude or strike the testimony in question.[4] He claims, in effect, that without the testimony of Cameron and Satterfield, he might have been acquitted. That, however, may be alleged in any case in which the effect of evidence is debated. However, we find no prejudice here. The other evidence adduced at trial, particularly the unchallenged testimony of one of the victims (Brown), readily would support the verdicts. Appellant never left the sight of the officers who (1) appeared on the scene while the crime was in progress, (2) pursued the suspects, and (3) left only after

---

3. Cameron had testified before the grand jury on the same incident several days prior to the appearance in question here. A transcript of that session was produced for use by the defense.

4. Again, we point out that there is no statutory provision for the pretrial exclusion of a witness' expected testimony because of a lost (or otherwise nonexistent) "statement" of that witness. *See* 18 U.S.C. § 3500 (1970).

appellant was under arrest. In light of such overwhelming eyewitness identification, appellant's acquittal argument borders on the frivolous. *See United States v. Person, supra.*

■ Additionally, appellant advances no possibility that the failure to produce the grand jury transcripts in any way foreclosed or circumscribed his trial preparation or the conduct of his defense. The purposes of the Jencks Act are to permit the defense access to witnesses' statements so as to enable an accused to have a full and fair trial, and to promote the objective of achieving the maximum truth. *See United States v. Perry, supra,* 153 U.S.App.D.C. at 94–95 & n. 21, 471 F.2d at 1062–63 & n. 21. Where a defendant does not show any prejudice to the interests which the Act is intended to protect, and where the striking of testimony as an automatic reaction to the unavailability of a statement would restrict rather than enhance the quest for truth, striking is neither compelled nor justified by the Jencks Act. This being the case here, and the trial court properly having found good faith efforts and no negligence on the part of the government, we hold that the trial court did not err in successively declining to exclude or to strike the testimony of Cameron and Satterfield. *See United States v. Carpenter,* 510 F.2d 738 (D.C.Cir. 1975); *cf. United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

II

Prior to trial, pursuant to D.C.Code 1973, § 23–111, the government filed two documents relating to prior convictions of appellant. One recited two prior robbery convictions, which purportedly would have subjected appellant to the increased penalty provisions of D.C.Code 1973, § 22–104a. The other recited one of appellant's prior robbery convictions, which subjected him to a ten-year maximum sentence for his conviction of carrying a pistol without a license. D.C.Code 1973, § 22–3204.

As we noted at the outset, appellant was found guilty of two ADW counts and of carrying a pistol without a license. For each of those three convictions, the trial court imposed sentences of 10 to 30 years, to be served concurrently. Appellant validly argues—and the government concedes—that each sentence is flawed.[5]

The repeat offender statute which the sentencing judge sought to utilize is § 22–104a of the Code. Imprisonment for terms greater than those provided in the statutes defining particular felonies are authorized by that statute for persons with a prior record of at least two felony convictions. Subsection (b)(2) of § 22–104a provides that

> a person shall be considered as having been convicted of two felonies if his initial sentencing under a conviction of one felony preceded the commission of the second felony for which he was convicted.

■ The prior convictions of appellant upon which the trial court relied in sentencing him arose from separate indictments which were handed down on the same date (June 21, 1961). As is apparent, those offenses could not satisfy the statutory definition of one who "shall be considered as having been convicted of two felonies", since the commission of the second offense could not have been subsequent to conviction and sentence in the first. Consequently, the increased sentences imposed were beyond the authority of the trial court.

The judgments of conviction are affirmed, but the case is remanded for resentencing.

---

5. Appellant's trial counsel did file a "Motion for Reduction of Sentence." However, the legal infirmities in the sentences were not then called to the attention of the trial court, which denied the motion.