UNITED STATES, Appellant,

v.

Carroll MONTGOMERY, Appellee.

No. 83–339.

District of Columbia Court of Appeals.

Argued Feb. 1, 1984.

Decided July 23, 1984.

---

Bruce A. Peterson, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and Darryl W. Jackson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Susan L. Schneider, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., were on the brief, for appellee.

Before MACK and ROGERS, Associate Judges, and KERN *, Associate Judge, Retired.

* Judge Kern was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

KERN, Associate Judge, Retired:

This appeal presents for our determination whether the trial court properly barred the victim of a shooting and robbery from testifying altogether at the trial of his alleged assailant because a police officer who investigated the crime, either was grossly negligent or intentionally failed to preserve both the photograph he showed the victim and the notes he took of the victim's identification of that photo. The photo was of someone other than defendant-appellee and the victim identified such photo as depicting his assailant. This misidentification occurred in the hospital where the victim was taken after being shot and robbed.

The matter arose for the first time during an apparently routine defense motion prior to trial to suppress all photographic, lineup and potential in-court identifications of the defendant-appellee by the victim. During the hearing by the court of this motion a conflict in testimony developed between the victim and a police officer over whether on the night of the shooting the police had shown the victim at the hospital some photos in a so-called mug shot book, asked some questions, and taken some notes of the victim's answers. The officer in question testified that while on that night he had shown the book of photos to *another* putative government witness and had made notes concerning an identification by *that* witness, he had *not* shown any photos to the victim.

On the other hand, the victim testified that while being treated at the hospital for his wounds he was asked questions and shown some photos and that some officers, among them this particular officer, wrote down what he said concerning his identification of one photo from among these photos as depicting his assailant.

The trial court, after hearing the testimony and considering the demeanor of the witnesses, found "that [the victim] was shown photographs by the police, selected

a photo of someone other than the defendant ... and that the police were taking notes during the photo array showing." The court further found "as fact that a police officer, most likely Detective Goode, recorded [the victim's] statements and wrote the number of the mug shot book and photo selected." The court concluded "that the defendant has established the existence of a Jencks Act statement as defined by 18 U.S.C. § 3500(e)(2)"[1] and "that the failure to preserve and produce the notes resulted either from gross negligence or bad faith intentional acts by the police, namely Detective Goode."

The trial court, in its written findings and conclusions, noted:

In fashioning an appropriate sanction, the Court must weigh the degree of negligence or bad faith involved, the importance of the evidence lost and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice. The court has already found gross negligence or bad faith [and] ... the Court finds the lost evidence to be critically important to the case and the evidence of guilt to be weak.

The court concluded "that the failure to preserve the notes of showing of the mug shot book prevents defendant from reconstructing the events and effectively cross-examining [the victim]. Since one of the purposes of the Jencks Act is to ensure that the defendant can effectively cross-examine government witnesses ... these facts must be weighed heavily."

The court then took up the reliability of the victim's identification of the defendant as his assailant despite the fact that the victim had identified someone else at the hospital shortly after the crime. Applying the factors enumerated by the Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the court noted the victim "had seen the defendant for no longer than ten (10) seconds immediately after he had been shot in the face; because of his injuries ... his [the victim's] attention was relatively low; ... no description was given [by the victim] of the person he now identifies as [the defendant]; the only description given [by the victim] is different from defendant's appearance; the incident occurred on November 28, 1981, and the ... lineup, was three months later on February 23, 1982; and at the lineup he [the victim] said 'looks like # 4', not a high level of certainty."

The court concluded that "[c]onsidering the totality of circumstances ... the reliability of [the victim's] identification is suspect and the defendant's ability to effectively challenge that identification would be severely limited because of the lost or destroyed notes." Accordingly, the court ordered pursuant to 18 U.S.C. § 3500(d)[2]

that [the victim's] testimony on the identification motion be stricken from the record and [the victim] be precluded from testifying at trial unless and until the requested notes are produced.

In reviewing the government's appeal of the trial court's order we are mindful of the Supreme Court's admonition in *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969), that "the administration of the Jencks Act must be entrusted to the 'good sense' and 'experience' of the trial judge subject to 'appropriately limited review of appellate courts.'" Here, the conscientious trial judge took testimony from a number of

1. This statutory subsection, in pertinent part, defines a "statement" as

a stenographic ... or other recording ... which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement....

2. This statutory subsection provides as follows:

If the United States elects not to comply with an order of the court ... to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

witnesses, made specific findings of fact upon the basis of the testimony, and we deem such findings to have support in the record.

█ The government urges that the trial court failed to exercise any discretion but rather rigidly applied a *per se* rule of exclusion based *only* upon its finding that the officer's failure to produce the photos and his notes of the victim's statement of identification of one such photo was grossly negligent or intentional. Pretermitting whether the trial court had authority to apply a so-called *per se* rule,[3] the trial court makes clear in its findings that it took into account not just the gross negligence or bad faith of the police officer in losing the photo and his notes of the identification of one such photo, but also considered in addition the importance of that lost evidence to the defense impeachment of the victim and the relative weakness of the victim's subsequent identification of the defendant as the assailant. In short, the court considered the totality of circumstances, *see Montgomery v. United States*, 384 A.2d 655, 662 (D.C.1978), and thus appears to have administered the Jencks Act with good sense and upon reasoned experience, all within the teaching of *United States v. Augenblick, supra.*

█ The government suggests that the Jencks Act was intended to exclude testimony of a witness only when the government is unwilling to provide to the defense "statements" of such witness for cross examination purposes, *not* when the government is willing but unable to provide to the defense the witness' statements in its possession. The government suggests (Brief at 25 n. 20) that this problem, *viz.*, the government's "inability to comply because producible material is unavailable" does not seem to have been considered by Con-

gress in enacting the Jencks Act. However, in this jurisdiction the Jencks Act has been interpreted as applicable when the government is willing but unable to produce the statement of a witness for defense use on cross-examination. Thus, the federal District of Columbia circuit court of appeals in *United States v. Perry*, 153 U.S. App.D.C. 89, 95, 471 F.2d 1057, 1063 (1972), concluded:

> We do not read "elect" in the literal or narrow sense, but rather as a purposive or negligent act on the part of the Government which has a direct and foreseeable result the loss or destruction of documents which otherwise the Government could be compelled to produce.

So, too, in *United States v. Bryant*,[4] the federal appellate court made it clear that the Jencks Act was applicable to material that could not be produced because it had been either destroyed or lost.

Finally, the government in its Brief (at 8, fn. 9) asserts: "[t]he conclusion that the missing notes can provide absolutely no benefit to the defense not already available through the [victim's] testimony at the [pretrial suppression] hearing and that of the police officers to whom he initially spoke fairly cries out from the record . . . ." Specifically, the government points out (Brief at 10, n. 9) that the victim "admits he selected someone other than the [defendant]" and asserts that "actually seeing the picture [the victim] chose could be of no more benefit to the defense than knowing that fact." The trial court was not so persuaded and neither are we; the photograph the victim picked out at the hospital as his assailant shortly after the crime constitutes highly material evidence with significant potential for impact upon the jury. The government's offer to stipulate to the *fact* that the victim picked a photo of

---

3. *See United States v. Jackson,* 450 A.2d 419, 427 (D.C.1982); *Johnson v. United States,* 298 A.2d 516, 520 (D.C.1972).

4. *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (1971). The decisions by this court have all accepted the proposition that a

Jencks Act sanction is applicable when the government is unable to produce because the police have lost or destroyed the statements of a government witness. *See, e.g., United States v. Jackson,* 450 A.2d 419 (D.C.1982).

someone other than the defendant does not in our view fill the void created by the loss of the photograph itself for viewing by the jury.

The government also urges (Brief at 9, n. 9), that "there is extensive impeachment material for the defense"—even without the officer's notes—of what the victim said as he identified the photo of someone other than the defendant as his assailant; and, the government argues: "What more could the notes tell?". The short answer is that the notes could have revealed what caused the victim, minutes after the shooting, to identify someone other than the defendant as his assailant, in contrast to the victim's identification several months later of the defendant as the gunman.

Finally, the government urges (Brief at 31) that at most the trial court should have merely granted the defendant's *motion to suppress* any identification by the victim at the trial of the defendant, "leaving [the victim] free to testify at trial to the facts of the offense but to make no identification." The government urges (Brief at 35) that "[w]ere the identification motion to be granted and [the victim] still permitted to testify at trial, the missing notes could have no conceivable relevance to his testimony simply about what happened to him."

 The government did not request the trial judge to consider allowing the witness to testify at trial as to the simple fact that he was shot at a certain place and time. It is evident from the legislative history of the Jencks Act that when the

government has elected not to produce the statement of the government witness who has testified, the trial judge has authority to exclude the entire testimony of the witness.[5] We also note, however, that the administration of the Jencks Act is entrusted to the sound discretion of the trial judge. *United States v. Augenblick, supra*, 393 U.S. at 355, 89 S.Ct. at 533. The trial judge may decide that the limited and unimpeachable testimony of the victim that he was shot and the date, time and place of such shooting does not relate to the statement made by the victim in the hospital when he identified someone other than appellee as his assailant. Accordingly, the trial court might in its discretion upon a proper showing by the government determine the victim could so testify.[6] *Cf. United States v. Graves*, 428 F.2d 196, 200 (5th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970) (limited testimony of witness that he had investigated the check forgery case and obtained the checks is not sufficiently connected with his destroyed reports as to require their production before he gives limited testimony).

*Affirmed.*

---

5. The following is from a colloquy during the Senate debate on the Act between Senator O'Mahoney of Wyoming and Senator Ervin of North Carolina:

Mr. Ervin. If the Government has substantial evidence, from the testimony of other witnesses, to establish the guilt of the defendant of the charge which has been made, the court can permit the Government to proceed on the basis of the testimony of the other witnesses, but the court could deprive the Government of the benefit of the testimony of the witness who is the author of the document which the Government *refused to produce; is that correct?*

Mr. O'Mahoney. That is correct.
103 Cong.Rec. 15784 (1957). *See United States v. Pope*, 574 F.2d 320, 324 (6th Cir.), *cert. denied*, 436 U.S. 929, 949, 98 S.Ct. 2828, 2856, 56 L.Ed.2d 774 (1978).

6. Of course, the trial judge might also decide upon further consideration that such limited testimony of the victim, without any ability by the defendant to cross-examine him and when the facts of the victim's injury can be proven by hospital records, is not sufficiently probative as to outweigh prejudice to appellee at the trial.