**Earl W. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8049.**

District of Columbia Court of Appeals.

Argued March 11, 1975.

Decided Aug. 7, 1975.

Frederick H. Weisberg, Washington, D. C., appointed by this court, for appellant.

Robert P. Palmer, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Joseph F. McSorley, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY and KERN, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

After a jury trial, appellant was found guilty of armed robbery [1] and sentenced to imprisonment for a term of from one year to life.[2] On this appeal he claims error in the denial of his pretrial motion to suppress as evidence the testimony of James Daniel the complaining witness (complainant) and the testimony of Police Officer Freto, one of the officers who investigated the robbery complaint. Error is claimed also in the trial court's refusal to order a mistrial because of remarks made by the prosecutor during his closing argument to the jury. Finding the claims of error to be insubstantial, we affirm the judgment of conviction.

Before the commencement of the trial the prosecutor furnished defense counsel a

1. D.C.Code 1973, § 22–2901.

2. D.C.Code 1973, § 22–3202(a). Appellant was previously convicted of robbery.

transcript of the grand jury proceedings, a copy of the "grand jury summary" and copies of completed police department report forms PD 163 and 251. Concerned that there might be other written material which had not been disclosed or produced, defense counsel requested and was granted a "Jencks" hearing.[3] It was disclosed at this hearing that Officer Freto made notes of his initial conversation with the complainant and that the notebook in which the notes were recorded had been misplaced or lost.

Defense counsel then moved the court to suppress, as a sanction compelled by the Jencks Act, 18 U.S.C.A. § 3500,[4] any testimony by the complainant and Officer Freto.[5] The trial court inquired of defense counsel whether a matter of identification was involved, observing that no request had been made for a "mini trial" pursuant to the *Wade-Gilbert-Stovall* doctrine. Defense counsel assured the court that no such question was involved. Nevertheless the trial court conducted a hearing on the motion to suppress at which there was testimony in substance as follows. Shortly after midnight on January 12, 1973, the complainant was assaulted and robbed by two men as he walked to his home after purchasing a box of chicken from the "Loop", a nearby restaurant. The shorter of the two men (appellant) confronted complainant and the other man approached from the rear. Recognizing appellant as a man he had seen in the restaurant as he purchased the box of chicken, complainant exclaimed: "[I]t can't be you, I just left you at the Loop." Complainant remembered that he had seen appellant on three or four prior occasions when he patronized the restaurant, and remembered also that appellant always had on a short gray coat, wore sunglasses and that a black scarf was tied about his head.

When assaulted, complainant grappled with appellant seizing him by the lapels of his gray coat but was soon wrestled to the ground as the second man caught him from behind, struck him on the head with a gun, thrust the gun in his mouth and threatened to "blow [his] tonsiles [sic] out." Complainant was robbed of his watch, money, and other articles of value and as the two men fled, complainant called out, "Shorty, I will see you again." Following the assault and robbery, complainant proceeded to his home and called the police. Officer

---

3. *See Campbell v. United States*, 365 U.S. 85, 95, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961) ; *Alexander v. United States*, 118 U.S.App.D.C. 406, 336 F.2d 910, *cert. denied*, 379 U.S. 935, 85 S.Ct. 336, 13 L.Ed.2d 346 (1964).

4. Insofar as here pertinent, the Jencks Act provides :

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of subpena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case.* [Emphasis added.]

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. . . .

\* \* \* \* \*

(d) If the United States elects not to comply with an order of the court under subsection (b) . . . the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him . . . .

\* \* \* \* \*

5. We have found nothing in the Jencks Act, D.C.Code 1973, § 23–104(a), or Super.Ct.Cr. R. 41(g), which contemplates any such pretrial proceedings. *Cf. United States v. Dockery*, D.C.App., 294 A.2d 158 (1972). *But see United States v. Perry*, 153 U.S.App.D.C. 89, 99 n. 43, 471 F.2d 1057, 1067 n. 43 (1972).

Pressley responded and after talking with complainant, completed PD Form 251 on which appellant was described as "short, dark complexion, medium build, wearing a three-quarter length coat."

Officer Freto also responded to the robbery complaint. According to his testimony, complainant after relating the circumstances of the robbery, described appellant to be of stocky build, wearing a three-quarter length black leather coat and large sunglasses with chrome rims. As the complainant talked, Officer Freto made notes in his notebook which he subsequently lost or misplaced.[6] A summary of the information recorded by Officer Freto in his notebook was, on the same day, incorporated in an investigative report which was made available at the hearing.

The complainant was determined to find the two men who assaulted and robbed him. To this end he returned on the following day to the Loop Restaurant area. While standing across the street from the restaurant he observed appellant who was wearing the same gray coat and black head scarf as the night before. Complainant alerted two police officers seated in a police car parked near the restaurant and identified appellant as one of the two men who assaulted and robbed him the night before. As the officers stood by, complainant walked up to appellant and said, "Do you remember me . . . Shorty?" Appellant was then arrested.

Complainant denied telling Officer Pressley that appellant was of medium build and denied telling Officer Freto that appellant was wearing a short black leather coat. He admitted telling both Officer

Freto and an investigator for the Public Defender Service that appellant was short and of stocky build and admitted telling the investigator that appellant was wearing sunglasses, a short gray coat and that a black scarf was tied about his head.

At the conclusion of the suppression hearing and after argument of counsel the trial judge ruled that, although there was clearly negligence in the failure to secure the notebook as required by the Police Department General Order,[7] there had been no showing of gross negligence or bad faith. The court ruled further that there had been no showing of prejudice or even the possibility of prejudice since complainant could be and in fact was impeached by Officer Freto's testimony respecting the statements made as the notes were recorded. Accordingly, the motion to supress the testimony of complainant and Officer Freto was denied.

A jury was then impanelled and at the trial complainant, Officers Pressley and Freto, and the investigator of the Public Defender Service repeated their testimony as adduced at the pretrial hearing. In addition, there was testimony by Officer Wallace, the arresting officer, as to the circumstances surrounding the arrest.[8]

The main thrust of the defense was that the complainant was mistaken in his identification of the appellant as one of the men who assaulted and robbed him. Stressed in the cross-examination of complainant were discrepancies in his description of appellant, i. e., whether he was of medium or stocky build and whether he was wearing a short gray cloth coat or a short black

---

6. The officer was familiar with Metropolitan Police Department General Order Series 601.2, effective May 26, 1972, revised September 1, 1972, establishing procedures for the retention and safeguarding of official reports. He explained that because he had not been furnished a suitable file cabinet, he thought it best, when he was given a different assignment, to take the notebook to his home where he kept it in his attic. When months

later the case was called for trial, the officer was unable to find the notebook.

7. *See* note 6, *supra.*

8. Prior to his conversation with the complainant, Officer Wallace was not informed of the participation of Officers Pressley and Freto in the investigation of the assault and robbery.

leather coat.[9] The issues of credibility thus posed were submitted to and determined by the jury adversely to appellant and a verdict of guilty as charged was returned.

■ We notice at the outset that there is no provision in the Jencks Act for a pretrial determination of the sanction, if any, to be imposed when Jencks' material is lost or misplaced.[10] In fact, the clear language of the Act would seem to preclude any such pretrial determination.[11]

■ In a proper case the Jencks Act permits the exclusion of the testimony of the witness whose statements were recorded. In this case it seems to have been thought that the Act also permits the exclusion of the testimony of the officer who recorded the statements. This, of course, is not so. *See Hardy v. United States,* D. C.App., 316 A.2d 867, 870 (1974), and *United States v. Maynard,* 155 U.S.App.D. C. 223, 230, 476 F.2d 1170, 1177 (1973).

We will assume, however, for the purpose of this opinion that appellant simply misconceived the reach of the Jencks pretrial hearing concept which, no doubt, accounts for his election to stand on the record made at the pretrial hearing rather than follow at the trial the procedure prescribed by the Jencks Act. In any event, no objection was interposed by the prosecutor to the pretrial suppression hearing and the trial court apparently approved the procedure.[12]

■ In refusing to suppress as evidence (strike at trial) the testimony of the complainant, the trial court exercised the discretion vested in it in the administration of the Jencks Act as enunciated in *United States v. Perry,* 153 U.S.App.D.C. 89, 95, 471 F.2d 1057, 1063 (1972). In that case the court said:

> Viewed in its proper perspective, the judicial process *is* a search for truth, not an adversary game, and therefore the Jencks Acts is not a mandate compelling the trial judge to strike (or bar) a witness' testimony when a previously made statement, irrespective of the reason, cannot be produced by the Government. . . . Whether the testimony of a witness is stricken or barred in advance, however, is in the discretion of the trial judge if eliminating the witness' testimony would restrict the search for truth rather than assist it in the instant and future cases.

As the Supreme Court has pointed out, "[T]he administration of the Jencks Act must be entrusted to the 'good sense' and 'experience' of the trial judges subject to 'appropriately limited review of appellate courts'". *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969), citing *Palermo v. United States,* 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

Appellant contends, however, that the circuit court has announced a standard of strict liability for negligent loss of material producible under the Jencks Act, a stand-

---

9. Appellant did not cause to be spread upon the trial record the objections he made pretrial to the testimony of complainant and that of Officer Freto.

10. In the interest of judicial economy a procedure for the pretrial determination of the existence of Jencks Act material has been fashioned and approved. *See Campbell v. United States, supra; Alexander v. United States, supra.*

11. 18 U.S.C.A. § 3500(a), provides:
In any criminal prosecution brought by the United States, no statement or report in

the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of subpena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case.* [Emphasis added.]

12. An examination of the pretrial transcript (185 pages) and the trial transcript (150 pages) discloses the absence of any judicial economy in this case.

ard which does not permit consideration of the degree of negligence involved in the loss of the material or the likelihood of prejudice. What the circuit court stated in this connection was that

> . . . in the future, federal investigatory agencies must promulgate and rigorously enforce rules designed to preserve all discoverable evidence and that nonpreservation caused by failure to follow the rules, whether in bad faith or mere negligence, will result in imposition of full sanctions. [*United States v. Bryant*, 145 U.S.App.D.C. 259, 260, 448 F.2d 1182, 1183 (1971), *aff'g on remand*, *United States v. Bryant*, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).]

However, in its subsequent decision in *United States v. Perry*, *supra*, the circuit court explained that it did not intend the standard enunciated in *Bryant* to be an inexorable rule for the imposition of Jencks Act sanctions where producible material has been lost, saying:

> . . . in *Bryant* we did say that even though Jencks Act information has been lost or destroyed
>
> > criminal *convictions* otherwise based on sufficient evidence *may* be permitted to stand so long as the Government made "earnest efforts" to preserve crucial materials and to find them once a discovery request is made. [*United States v. Perry*, *supra* at 97, 471 F.2d at 1065.] [Emphasis in original; footnote omitted.]

The court explained further in *Perry*, that

> . . . unless either in the instant or subsequent cases the interest of justice will be furthered by penalizing the Government, then that penalty is not to be invoked automatically as in an adversary game. In order to exclude testimony, there should be a showing of either negligence or purposeful destruction accom-

panied by either bad motive or bad judgment. . . . *Id.* at 99.

The *Perry* court concluded by saying:

> As we said in *Bryant*, we have adopted a balancing approach for these cases which gives broad discretion to the trial court. If, even after finding some degree of negligence, the trial court finds the risk of prejudice to the defense slight, it can refuse to impose the Jencks Act sanctions. [Footnotes omitted; *id* at 100.]

See also the separate opinion of Mr. Justice Frankfurter in *Campbell v. United States*, 365 U.S. 85, 102, 81 S.Ct. 421, 5 L. Ed.2d 428 (1961), where it was said, "Congress surely did not intend to initiate a game of chance whereby the admission of a witness' testimony is made to depend upon a file clerk's [police officer's] accuracy or care."

Significantly, after the *Bryant* decision and in compliance with its directions, the Metropolitan Police Department issued general orders establishing guidelines for the preservation of potentially producible material,[13] including police rough notes, a fact which the circuit court was "pleased to note." *United States v. Bundy*, 153 U.S.App.D.C. 191, 192 n. 3, 472 F.2d 1266, 1267 n. 3 (1972). In his concurring opinion in *Bundy*, Judge Leventhal questioned whether it was necessary to establish ". . . an across-the-board rule that it is automatically 'error'—though possibly the error may be 'harmless'—to receive a witness's testimony if the original notes were destroyed in the course of preparing another report . . . ." Rather, "[i]n some circumstances, and particularly in the face of a general routine of preservation, such as the D. C. police have established, the absence of notes may be the kind of mishap best handled by instructing the jury with an adaptation of the kind of instruction used in case of a missing witness, that the jury is free to infer that the missing original notes would have been different

13. *See* note 6, *supra*.

from the testimony at trial and would have been helpful to defendant. . . . " *Id.* at 194, 472 F.2d at 1269. *See also United States v. Maynard, supra.*

We think the decisions discussed above demonstrate that the circuit court never intended its directive in the *Bryant* case to constitute an inflexible rule of exclusion which would bar a trial judge from exercising his considered judgment in determining on an ad hoc basis whether sanctions under the Jencks Act should be imposed. *United States v. Augenblick, supra; United States v. Perry, supra.* Considering the fact that of the thousands of criminal prosecutions in the Superior Court since the promulgation of the Police Department General Order only a very small number involved loss of a police officer's notes, we are satisfied that the Metropolitan Police Department has made "earnest efforts" to preserve crucial material. *See Hardy v. United States, supra; Savage v. United States,* D.C.App., 313 A.2d 880 (1974). In previous cases involving the loss of producible material, we have sought to apply a balancing approach in determining whether Jencks Act sanctions should have been invoked. This test involves consideration of the degree of negligence involved in the loss of producible material and the possible prejudice to the defendant resulting from the failure to produce such material. *Hardy v. United States, supra. See also Johnson v. United States,* D.C. App., 322 A.2d 590 (1974); *Banks v. United States,* D.C.App., 305 A.2d 256 (1973). Thus, consistent with our concern with the protection of the substantial rights of the accused, we have recognized the public interest involved in the enforcement of the criminal laws.

■ We are, therefore, of the opinion that a balance should be struck between the rights of the accused and the public interest, when relevant Jencks Act material has been nonpurposefully lost or destroyed. In the process the imposition of a sanction less severe than striking the testimony of the witness involved or declaring a mistrial may be indicated. Consequently, we think that in a proper case arising in the future the trial judge may in lieu of any other sanction charge the jury with a variant of the so-called missing witness instruction, [*United States v. Bundy, supra,* at 194, 472 F.2d at 1269 (Leventhal, J., concurring).]

Upon examination of the record in the case at bar, we are not persuaded that the trial judge abused his discretion when he refused to invoke the sanctions of the Jencks Act to bar the testimony of the complainant and Officer Freto.[14] True it is that the trial judge found that the police department was negligent in failing to provide the officer with an office file where his notebook could be kept reasonably secure. The officer, however, was aware of the necessity of preserving his notebook and took precautions to safeguard it by storing it in his home. The trial judge could therefore, reasonably conclude that there was "no showing of bad faith, or the kind of negligence, going beyond the mishap all of us may encounter" that would warrant the invocation of sanctions. *United States v. Person,* 155 U.S.App.D.C. 455, 456, 478 F.2d 659, 660 (1973).

■ Moreover, in view of the extensive pretrial discovery of other Jencks material, in some of which statements made by complainant to Officer Freto were incorporated, and the availability of Officer Freto to testify as to the contents of his notes, the possibility of prejudice to the appellant was remote in our opinion. *See Killian v. United States,* 368 U.S. 231, 243, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). At the pretrial hearing and also at trial appellant's counsel fully explored the discrepancies in the complainant's description of the appellant. *See Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). The complainant stoutly maintained that he recognized the appellant at the time of the

14. *See Hardy v. United States, supra* at 870.

robbery as the person he had seen on several occasions at the Loop Restaurant. Complainant recognized him again when he sought and found him at the restaurant on the following day. Whatever view may be taken, therefore, as to the minor inconsistencies in the complainant's reports of the assault and robbery, *i. e.,* whether appellant was of medium or stocky build and whether he was wearing a short gray coat or a short black leather coat, the inescapable fact is that appellant was not arrested by reason of any description given to either Officer Pressley or Officer Freto. The arrest by Officer Wallace followed an on-the-scene identification by complainant of appellant as a participant in the assault and robbery. *Hardy v. United States, supra* at 870.

■ With respect to appellant's other claim of error, we are satisfied that the remarks of the prosecutor complained of were not referenced to appellant's failure to testify in his own defense. Because the court gave promptly an adequate curative instruction, we find no error affecting his substantial rights. *See Blango v. United States,* D.C.App., 335 A.2d 230 (1975).

Accordingly, the judgment of conviction is

*Affirmed.*

KELLY, J., concurs in the result only.