Nathan S. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 9456.

District of Columbia Court of Appeals.

Submitted Nov. 13, 1975.

Decided April 14, 1976.

Charles A. Kubinski, Washington, D. C., appointed by this court, for appellant.

Edward D. Ross, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Theodore A. Shmanda, and James F. McMullin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before FICKLING and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

MACK, Associate Judge:

Appellant was convicted of armed robbery[1] after a trial by jury. His primary contentions on appeal are that the evidence was insufficient to sustain his conviction and that the trial court failed to

1. D.C.Code 1973, §§ 22–2901, –3202.

comply with the requirements of the Jencks Act, 18 U.S.C. § 3500 (1970).[2] After careful consideration we affirm.

The charges against appellant stemmed from the robbery of Mr. Earl Webb on the evening of August 27, 1974. As Mr. Webb was walking home that night, a man approached him and pointed a gun at his head, saying "This is a stick-up." The assailant instructed Webb to continue walking and held his arm as the two walked slowly together for approximately two or three blocks. They had walked part way down a quiet side street when the assailant stopped, faced Webb, and ordered him "to take off everthing that [he] had." Webb handed over his watch and a gold ring. The assailant then reached into Webb's pocket and took out a wallet. After removing 60 dollars, he wiped it, dropped it to the sidewalk, and fled.

Approximately one hour later, Webb described the robber to two police officers as a slim man in his twenties, about five feet six inches tall, with a dark complexion, short hair, and a moustache. He gave the same description to another officer, Detective Simms, the next morning. Two weeks later, Webb identified appellant as his assailant from a photographic array. He also positively identified him from a lineup approximately one month after the robbery.

At trial the primary evidence linking appellant to the crime was evidence of Webb's two pretrial identifications and an in-court identification of appellant by Webb. Appellant denied taking part in the robbery, but stated that he did not remember where he was on the evening in question. On appeal, he argues that the trial court improperly denied his motion for judgment of acquittal.

In considering whether to submit a case to the jury, the trial judge must determine "whether there is sufficient evidence to allow the jury to find guilt beyond a reasonable doubt". *Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). *See also Marshall v. United States*, D.C.App., 340 A.2d 805, 808 (1975); *In re W.K.*, D.C.App., 323 A.2d 442, 445 (1974). In a case in which the evidence of guilt consists of an identification by a single eyewitness, the issue becomes "whether the circumstances surrounding the identification could be found convincing beyond a reasonable doubt". *Crawley v. United States*, D.C. App., 320 A.2d 309, 311 (1974).

We find ample evidence in this record to warrant submitting the case to the jury. Webb made three positive identifications of appellant as his assailant.[3] The incident in question lasted fifteen minutes, during which time Webb had ample opportunity to view the assailant's face at extremely close range. The streets were brightly lit, and the robber made no effort to conceal his features.

Appellant argues that a discrepancy between Webb's description of the robber's height and appellant's actual height established a reasonable doubt as to his guilt. Webb steadfastly described the robber both to the investigating police officers and at trial as being almost the same height as himself, namely five feet six inches tall.[4] Appellant testified that he was actually five feet ten and one-half inches tall. In light of Webb's excellent opportunity to observe the robber during the incident and the fact that he never wavered in his identification of appellant, the height discrepancy alone does not indicate a substantial likelihood of misidentification. *Cf. Crawley v. United States, supra* 320 A.2d at 312.

---

2. Appellant advances other arguments involving an allegedly prejudicial in-court demonstration and the admission of certain testimony concerning his psychiatric history. A review of the record discloses that his contentions with respect to these issues are without merit.

3. At no time has appellant challenged the pretrial identifications on the ground of undue suggestivity.

4. After a demonstration in court in which the two men stood next to each other, Webb, who was wearing shoes with a one inch heel, estimated that appellant was five feet seven.

Appellant's next contention concerns alleged violations of the Jencks Act, 18 U.S.C. § 3500 (1970). After Webb's direct testimony at trial, defense counsel requested and was granted a hearing to determine whether the original investigating officers had taken notes of their interview with Webb on the night of the incident.[5] At the hearing Webb testified that he had been questioned by two uniformed police officers that night; that each officer had taken notes during the interview; that one of the officers had read his notes back to him; and that he had indicated they were correct and had signed them in the officer's notebook "between two paragraphs."[6] Defense counsel moved both for production of the notes under the Jencks Act and also to strike Webb's testimony if they were not produced. The court thereupon recessed the hearing to give the government an opportunity to locate the officer who prepared the investigation report, suggesting that the government have both of the investigating officers present in court.

When the hearing reconvened two hours later, the government called Officer Smith who testified that he and his partner had questioned Webb after the robbery; that he had recorded Webb's responses in a notebook; that he had repeated the description of the robber to make sure he had taken it down correctly; that he had never asked Webb to sign anything; and that his notes were the basis for the "general lookout" broadcast and for the original offense report which he had prepared. Officer Smith also stated that his partner had not taken any notes and that it was standard procedure in a "one complainant" case for only one officer "to handle it entirely." Defense counsel was supplied with a copy of Smith's notes, which had not been signed by Webb.

The government presented no other witnesses, asserting that it had produced all the Jencks material in existence. After summarizing the conflicting evidence from Mr. Webb and Officer Smith, the trial court concluded that it was unclear whether the second officer took any notes which were signed by Webb. Appellant's motion to strike Webb's testimony was denied; however, defense counsel was granted wide latitude in cross-examining any witness concerning possible statements made by Webb.[7]

Appellant argues that because the government failed to produce the notes of the second investigating officer, Webb's testimony should have been stricken under the Jencks Act.[8] He contends that the govern-

---

5. At the start of trial, the government had supplied defense counsel with "all known Jencks material", including the robbery investigation report prepared by one of the officers who interviewed Webb on the night of the robbery, and the handwritten notes of the detective who interviewed him the next morning. Notes of the first interview were not included in that material.

6. Webb hesitated before stating that he had signed the notes. Later at trial he testified that he was not positive that he had signed anything.

7. The court stated:
   I'm not going to strike the testimony of Mr. Webb.
   Of course, there are other sanctions, I think, that the Jencks Act provides that would not be as stringent as striking the testimony, anyway.
   But I'm certainly not going to strike his testimony.

I'll permit you to cross-examine him in the presence of the jury about any other witness, any other person, any other notes, anything that you with [sic] to cross-examine him on.
   But we have an Officer who says he was there on the scene and that there was somebody assisting him—another officer—but only one took notes and no one asked him to sign anything.
   And we do know for a fact that Mr. Webb had contacted at least one other officer, we know about some detective.
   So precisely who, when, or where he signed something between two paragraphs is not clear to me; and you can try to develop it during your case in chief.
   But I would deny your motion to strike his testimony.

8. 18 U.S.C. § 3500(d) (1970).

ment was required either to produce the notes or to call the officer himself to resolve the issue of whether the notes were in existence.

■■■ When a defendant seeks production of a statement under the Jencks Act, the trial court has an affirmative duty to determine whether any such statement exists and to conduct such inquiry as may be necessary to resolve the issue. *Matthews v. United States*, D.C.App., 322 A.2d 908, 910 (1974); *Duncan v. United States*, 126 U.S.App.D.C. 371, 374, 379 F.2d 148, 151 (1967); *Williams v. United States*, 117 U. S.App.D.C. 206, 208, 328 F.2d 178, 180 (1963); *Saunders v. United States*, 114 U. S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963), *cert. denied*, 377 U.S. 935, 84 S.Ct. 1339, 12 L.Ed.2d 299 (1964). *See also Campbell v. United States*, 365 U.S. 85, 93–96, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961). The fact that the prosecutor does not admit the existence of a statement does not relieve the court of its duty to determine whether the statement in fact exists. *Leach v. United States*, 115 U.S.App.D.C. 351, 352, 320 F.2d 670, 671 (1963). *See also Matthews v. United States, supra; In re S.W.B.*, D.C.App., 321 A.2d 564, 566 (1974). Once a defendant makes a prima facie showing of his or her entitlement to a statement, the trial judge should at least require the government to come forward with evidence to answer that case. *Campbell v. United States, supra*, 365 U.S. at 96, 81 S.Ct. 421.

■■■ Police investigatory notes constitute a potential statement producible under the Jencks Act. *Moore v. United States*, D.C.App., 353 A.2d 16 at 19 (1976). The trial court in this case did not determine whether the alleged statement existed. Furthermore, the inquiry into the

matter was inadequate since the court found itself unable to resolve the issue on the basis of the testimony presented at the hearing. Under these circumstances, the government should have been required to produce the second police officer or explain why it could not. *See Campbell v. United States, supra*, 365 U.S. at 94–96, 81 S.Ct. 421. *Williams v. United States, supra* at 209, 328 F.2d at 181; *cf. United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *Johnson v. United States*, D.C.App., 298 A.2d 516, 519 (1972); *Saunders v. United States, supra* at 349, 316 F.2d at 350.

■■■ We conclude that the trial court erred in failing to determine whether any notes were taken by a second police officer and if so, whether they constituted a statement producible under the Jencks Act.[9] However, in part because of the latitude allowed defense counsel in cross-examination, we find the error to be harmless.

■■■ Although the alleged notes might have contained an initial description given by the complainant, their importance was considerably diminished by the fact that appellant was supplied with other comprehensive notes of the very same interview. *See United States v. Harrison*, 174 U.S. App.D.C. ——, 524 F.2d 421, 434–35 (1975). Thus, in all likelihood appellant already had the same information which he might have been afforded had the alleged statement been produced. *See United States v. Baker*, 358 F.2d 18, 21 (7th Cir.), *cert. denied*, 385 U.S. 869, 87 S.Ct. 135, 17 L.Ed.2d 96 (1966). *See also Killian v. United States*, 368 U.S. 231, 243, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); *Rosenberg v. United States*, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L. Ed.2d 1304 (1959). Appellant also receiv-

---

9. After a finding that Jencks material is in existence, the Act itself provides two sanctions for nonproduction of a statement in the government's possession: the court may either strike the testimony of the witness involved or declare a mistrial. *See* 18 U.S.C. § 3500(d) (1970). Other sanctions, such as

a variant of the missing witness instruction, may be appropriate under the limited circumstances in which a statement, once in the government's possession, has been lost or destroyed and is no longer producible. *Jones v. United States*, D.C.App., 343 A.2d 346, 352 (1975).

ed copies of numerous other statements by the witness, most important of which were notes taken during the second interview a few hours later. Throughout extensive cross-examination of Webb and the two officers whose notes were supplied to the defense, counsel was unable to unearth any discrepancies between Webb's prior descriptions of appellant and his testimony at trial. Upon careful consideration of the entire record, we conclude that appellant suffered no prejudice from nonproduction of the alleged notes of the second officer. *See United States v. Smaldone,* 484 F.2d 311, 318 (10th Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Baker, supra. See also Jones v. United States,* D.C.App., 343 A.2d 346, 352 (1975).

*Affirmed.*