Wanda R. BROWN, a/k/a Wanda R. Karmur, Appellant,

v.

UNITED STATES, Appellee.

No. 86–123.

District of Columbia Court of Appeals.

Submitted Feb. 16, 1989.
Decided March 30, 1989.

---

* Associate Judges Mack and Newman have recused themselves from participation in this case.

Diane S. Lepley, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., with whom Michael W. Farrell and Roberto Iraola, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN and SCHWELB, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

A jury found appellant and her codefendant, Anthony Rogers, guilty of two counts of distribution of controlled substances. D.C.Code § 33–541(a)(1) (1988 Rpl.). The sole contention on appeal is that the trial court erred in giving a missing witness instruction against the defense. We affirm.

At trial, an undercover narcotics officer testified that on April 25, 1985, he drove into the 800 block of T Street, N.W., and pulled over to the curb where appellant was standing. Appellant entered the vehicle and sat next to him in the front seat. He asked appellant if she had any "boat," a street name for marijuana laced with phencyclidine (PCP). Appellant handed him a tinfoil packet containing what later tests showed to be marijuana and PCP. The officer asked appellant for another one, tendering $30 in prerecorded currency.

She beckoned Rogers, who was nearby, and gave him some money. The latter returned soon after with a tinfoil packet which appellant handed to the officer.

After appellant left, the officer radioed a description of appellant and Rogers to a team of arresting officers. Another detective noted that as appellant walked up the street she met a third man, later identified as William Pete, to whom she transferred some currency she held in her hand, prompting the officer to broadcast a description of this third individual.

Responding to the broadcasts, the arresting officers arrived on the scene a few minutes later and detained appellant, Rogers and Pete. After the undercover officers drove by and identified the trio as the individuals who had participated in the drug transaction, they were placed under arrest. A search of Pete's pockets yielded a $20 bill bearing the same number as one of those handed appellant by the first undercover officer.

When the government rested, a defense of mistaken identity was presented. Appellant testified that she was not the woman who had engaged in the drug transaction described by the undercover officer, but happened to be in the area because she was on her way to do some grocery shopping for herself and a woman who was staying with her. Because their apartment was a substantial distance away from the store, she had borrowed a bicycle from the resident manager and set out more than an hour before the incident described in the police testimony occurred. On her way she saw Rogers and chatted briefly with him. She also encountered Pete and asked him to change a $20 bill for her. As the latter was walking away to get change, police suddenly arrived, took Rogers into custody and arrested her.[1]

On cross-examination, the government elicited from appellant that she had been with another young woman when arrested and during the conversations with Rogers and Pete which she had described. She

---

1. The friend who was staying in appellant's apartment on that day, and the resident manager from whom appellant had borrowed the bicy-cle, testified and corroborated her account as to the time and reason appellant left her apartment.

testified that the name of her companion was Sheila Joyner, who resided at 14th and U Streets, that she was a friend, but not a "good friend." When appellant rode down from upper 14th Street that afternoon, she found Miss Joyner in front of her house, left the bicycle there, and invited Miss Joyner to accompany her on the shopping expedition—a walk which eventually brought them near the 800 block of T Street.

Defense counsel objected to this line of questioning on the ground that the prosecutor was trying to get "a missing witness instruction through the back door." The trial judge overruled this objection, and asked whether Miss Joyner was in court. Counsel admitted "making efforts to get her," but ultimately decided that any testimony by her would be "supplemental." The court disagreed with this assessment, allowed cross-examination to be resumed, and ultimately, in a bench conference, granted the prosecution's request for a missing witness instruction. In explaining his ruling, the trial judge showed that he was keenly aware of the stringent limitations this court has placed upon the missing witness rule, but pointed out the conditions permitting trial courts discretion to give such an instruction were present in the case before him.

██ When a party has it peculiarly within his power to produce a witness whose testimony would elucidate the transaction at issue and the party does not produce the witness, the trial court may instruct the jury that it may infer that the testimony of that witness would have been unfavorable to the party to whom the witness was available. *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). Whether the two conditions—(1) that the witness' testimony must be likely to elucidate the transaction at issue, and (2) that the witness must be peculiarly available to the party who failed to call him— for such an instruction are met, is a factual determination for the trial court. *Shelton v. United States*, 388 A.2d 859, 863 (D.C. 1978). Once the court determines that the two factors are met, it must then exercise its discretion keeping in mind that the instruction "creates evidence from non-evidence." *Thomas v. United States*, 447 A.2d 52, 58 (D.C.1982). This court will not reverse a trial court's decision on whether to give a missing witness instruction unless we find that the court abused its discretion. *Singley v. United States*, 533 A.2d 245, 249 (D.C.1987); *Leftwich v. United States*, 460 A.2d 993, 995 (D.C.1983).

██ The trial court specifically found each of these two conditions precedent for the instruction were established by the evidence here, and thereafter, exercised its discretion. We find no abuse of discretion.

Contrary to appellant's contention that any testimony by Miss Joyner would merely have been cumulative or supplemental to her own testimony, we deem the trial judge on sound ground in ruling that such testimony would have been "superior." Granted that if the absent witness corroborated the version of the accused, such testimony might be regarded as repetitious, but corroborative testimony by an impartial person ordinarily commands more credibility than testimony of a party with an interest in the outcome of the case.

Nor are we impressed by appellant's assertion that Miss Joyner was equally available to the government as a witness, because having learned of her name and address in cross-examination, it could have subpoenaed her to testify. The trial court found that the government had less than an hour when the court recessed in which to find Miss Joyner and perhaps call her as a rebuttal witness. The court concluded that such a short period of time rendered the witness unavailable to the government. While there is no *per se* rule that a witness whose existence does not come to light until trial is unavailable, *Miles v. United States*, 483 A.2d 649, 658 n. 9 (D.C.1984), such conclusion on the facts of this case was neither plainly wrong or unsupported.

In view of the unsatisfactory explanation advanced by the defense for not calling a key witness, we cannot say that the instruction given the jurors in this case amounted to an abuse of discretion, particularly as the trial judge, in a supplemental instruction, emphasized that it was wholly

up to the jury to determine whether an adverse inference should be drawn.

We are still of the opinion that trial judges should exercise great caution in giving a missing witness instruction. Any charge which encourages a jury to presume that the testimony of a possible witness whom a party fails to call would contradict testimony already offered by that party would, under some circumstances, be unfair. For example, if a lawyer in preparation for trial discovers that a possible witness, because of a prior criminal record or unpleasant personal characteristics would be an embarrassment, his failure to call him should not result in a prejudicial ruling against his client.

The record here, however, reveals that the tactical reason given by the defense for not placing Miss Joyner on the stand had nothing to do with such factors. Under these circumstances, we discern no error in the challenged instruction.

*Affirmed.*