**Ricky Allen GRESHAM, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 93–CF–768.

District of Columbia Court of Appeals.

Argued Jan. 11, 1995.

Decided Feb. 16, 1995.

Richard K. Gilbert, Washington, DC, for appellant.

Lilly Ann Sanchez, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Thomas C. Black, and Lisa Prager, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and GREENE, Associate Judge of the Superior Court of the District of Columbia.*

FARRELL, Associate Judge:

■ Appellant raises multiple challenges to his convictions for felony murder while armed (D.C.Code §§ 22–2401, –3202) (1989), second-degree murder while armed (*id.* §§ 22–2403, –3202), armed robbery (*id.* § 22–2901, –3202), possession of a firearm during a crime of violence (*id.* § 22–3204(b)), and carrying a pistol without a license (*id.* § 22–3204(a)). We remand with directions to the trial court to vacate the convictions for second-degree murder while armed and armed robbery, these having merged with the conviction for felony murder while armed. Otherwise we affirm the judgments of conviction.

The government presented compelling evidence that appellant shot to death Sharon

Bryant in the course of robbing her on March 7, 1992. Appellant confessed to the police to having shot Bryant (though claiming a form of self-defense) and admitted the killing and robbery to Steven Moat and Donna Jones.[1] Moat, together with William Stalnaker and James Long, witnessed the shooting and robbery.[2] The autopsy revealed that Bryant had been shot twice, once in the back.

## I.

■ Appellant first contends that his confession to the police should have been suppressed because, at the time of his arrest but before the police questioned him, he invoked his right to counsel by asking his girlfriend, in the presence of police, to call his mother and tell her to get him a lawyer. At the least, appellant argues that the case should be remanded so the trial judge can make a finding whether the police heard this statement to his girlfriend.[3] The government counters by asking us to hold flatly that a desire for an attorney expressed to a third person, whether or not overheard by police, is not an assertion of the right to counsel under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

We reject appellant's arguments and find it unnecessary to reach the government's broad contention. In *combination,* the fact that appellant made his request for counsel to his girlfriend (even if the police overheard it), and the content of the statement itself, leave us unpersuaded that appellant clearly asserted his right to the presence of counsel during interrogation, as required by the Supreme Court's most recent pronouncement in this area.

■ Since *Edwards, supra,* it has been settled that

[i]f [a] suspect [in custody] effectively waives his right to counsel after receiving

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

1. Before the robbery appellant told Jones he felt like robbing someone and showed her his gun. Two days after the shooting he told her he had shot a woman because she would not give him money.

2. Stalnaker, however, did not make an identification of appellant as the shooter.

3. Although the judge discussed the issue in some detail, it is not clear that he resolved the issue whether the police had heard the statement.

the *Miranda*[4] warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.

*Davis v. United States,* —— U.S. ——, —— ——, 114 S.Ct. 2350, 2354–55, 129 L.Ed.2d 362 (1994) (citations omitted). In *Davis* the Court considered the issue of "how law enforcement officers should respond when a suspect makes a reference to counsel that is insufficiently clear to invoke the *Edwards* prohibition on further questioning." *Id.* at ——, 114 S.Ct. at 2352. The Court apprehended the need for "a bright line that can be applied by officers in the real world of investigation and interrogation," *id.* at ——, 114 S.Ct. at 2356, and therefore held that, before "the rigid prophylactic rule of *Edwards*" will apply, *id.* at ——, 114 S.Ct. at 2355 (internal quotation marks and citation omitted), "the suspect must unambiguously request counsel." *Id.* Otherwise the Court was content to rely upon "the primary protection afforded suspects subject to custodial interrogation," which "is the *Miranda* warnings themselves." *Id.* at ——, 114 S.Ct. at 2356. Consequently, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at ——, 114 S.Ct. at 2355 (emphasis in original).[5]

■ Appellant's request to his girlfriend was made before the police questioned him or administered the *Miranda* warnings. Only after they escorted him to the police station and elicited what he concedes (absent the claimed earlier assertion of his right to counsel) was a valid waiver of his *Miranda*

rights did they interrogate him and obtain his confession. Nonetheless, we must analyze appellant's statement to his girlfriend under the *Davis* standard, since, if it *was* the required "clear assertion of the right to counsel," *id.* at ——, 114 S.Ct. at 2356, the later waiver of his *Miranda* rights would not suffice under *Edwards.*[6] We hold that the statement was not the assertion of the right *Davis* requires.

The government contends that the request was equivocal given the fact alone that it was made to someone other than the police. A reasonable officer, that is, could not be certain appellant intended to invoke his right since he left it to chance (or at most probability) whether the police overheard the statement. An unambiguous request would be directed to the persons intended to act in conformity with it. There is considerable merit to this point but we do not rest our holding solely on the form of appellant's request—its direction to a third person. Rather, the content of the statement confirms its ambiguity. Appellant asked his friend to tell his mother to get him a lawyer. While that *might* convey to a reasonable officer appellant's "desire to deal with the police only through counsel," *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1885, it might also—and not unreasonably—convey his desire for a lawyer to represent him in court (beginning with the bail hearing), confident meanwhile of his own ability to avoid self-incrimination. The former may be the more plausible interpretation, but "the *likelihood* that a suspect would wish counsel to be present [during interrogation] is not the test for applicability of *Edwards.*" *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (emphasis in original). He must assert that desire clearly, *Davis, supra,* and appellant did not do so. The ensuing conduct of the police was therefore faultless—

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

*Davis,* —— U.S. at ——, 114 S.Ct. at 2355 (internal citation omitted).

6. That is, the government does not claim appellant "reinitiated" communication with the police between the initial statement to the girlfriend and the later advice of rights.

and, indeed, would have met the approval of those justices in *Davis* who rejected the Court's "bright line" test. The police "verif[ied] whether [appellant] meant to ask for a lawyer," *Davis*, — U.S. at —, 114 S.Ct. at 2364 (Souter, J., concurring in the judgment), by advising him of his *Miranda* rights and acceding to his request to be left alone for five to ten minutes to consider whether he wanted to give a statement. Only after he waived his rights to counsel and to remain silent did they interrogate him. There was no violation of *Edwards'* prophylactic rule.[7]

## II.

Appellant's remaining arguments can be dealt with briefly. *First,* assuming error in the trial court's failure to make an independent reliability finding as to the in-court identification by Steven Moat, the error was harmless. The evidence was undisputed that Moat had known appellant for at least six months before the shooting in question. Moreover, independently of Moat's identification, the evidence was compelling that appellant shot Bryant repeatedly in the course of robbing her. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[8]

*Second,* the trial judge did not abuse his discretion in refusing appellant's request, not made until the start of the government's case, to allow the jury to use a defense-prepared transcript of his videotaped confession to the police. In objecting to use of the transcript during the government's case, the prosecutor pointed out that she had never seen the transcript before. In *Springer v. United States,* 388 A.2d 846, 853 (D.C.1978),

the court emphasized the importance of a preliminary verification of the accuracy of transcripts sought to be admitted to assist the jury. Neither the prosecutor nor the trial judge was given the opportunity to make that determination. The exclusion of the transcript in these circumstances was a proper exercise of the court's discretion. *Id.*

*Third,* assuming the judge should have allowed further inquiry into whether the police had made handwritten notes of their interview with the witness Stalnaker, the error was not prejudicial since the notes (if any) were immediately incorporated into typewritten statements reviewed and signed by the witness and later produced to the defense. *See Groves v. United States,* 564 A.2d 372, 378 (D.C.1989); *Gibson v. United States,* 536 A.2d 78, 83 (D.C.1987); *Williams v. United States,* 355 A.2d 784, 788–89 (D.C. 1976).

*Fourth,* any prejudice to appellant from a witness' testimony that he and appellant were "getting high associates" was neutralized by the judge's instruction to the jury to disregard the remark. *See Poole v. United States,* 630 A.2d 1109, 1128 (D.C.1993).

*Fifth,* given our affirmance of appellant's conviction for felony murder while armed, the asserted error in the judge's instruction concerning second-degree murder will be mooted by the vacatur of that conviction which we direct.[9] We note, however, the government's agreement that the judge "misplaced" the lack of provocation/heat of passion element by including it as part of the

---

7. Appellant also argues that his confession was the tainted fruit of an unlawful arrest. The claim is meritless. He was arrested pursuant to an arrest warrant at what he conceded in the suppression hearing was his home. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), imposing an additional warrant requirement when a *third party* challenges the entry of his or her home pursuant to an arrest warrant for another, has no application to this case.

8. We reject appellant's related claim of prejudicial misconduct by the prosecutor in inducing appellant's counsel to withdraw his pretrial mo-

tion to suppress identification testimony. Nonetheless, we agree that the prosecutor offered no valid reason for failing to inform appellant immediately once she learned (belatedly) that Steven Moat would make an in-court identification. The fact that the prosecutor did not intend to elicit an out-of-court identification by Moat did not excuse the failure to inform appellant of this change of events.

9. The government agrees with this disposition and hence no longer presses the suggestion made on brief that the trial judge on remand may instead vacate the felony murder conviction and leave standing the convictions for second-degree murder and armed robbery.

voluntary manslaughter instruction rather than as part of the second-degree murder instruction.[10]

 *Finally,* although post-trial investigative services are allowable under D.C.Code § 11–2605(a) (1989), *see Robinson v. United States,* 565 A.2d 964, 969 (D.C.1989), appellant failed to make the required showing that "the services are necessary," § 11–2605(a), and thus the judge did not abuse his discretion in denying the request for those services.

Accordingly, with the exception of the remand we direct as to the convictions for second-degree murder while armed and armed robbery, the judgments of conviction are

*Affirmed.*

---

**10.** As to appellant's remaining instructional claim, the judge could properly find that appellant satisfied neither requirement for the missing witness instruction. *See, e.g., Brown v. United States,* 555 A.2d 1034, 1036 (D.C.1989).